## BLAKE *v.* HAWKINS.

1. An appointment under a power is an intent to appoint carried out, and, if made by the last will and testament of the donee of the power, the intent, although not expressly declared, may be determined by the gifts and directions made, and if their purpose be to execute the power, the instrument must be regarded as an execution.

2. A., who had a power to appoint a fund in the hands of B., made her will, wherein she declared her intention thereby to execute all powers vested in her, particularly those created in her favor by certain deeds executed in 1839, whereby she became entitled to appoint that fund. Following this declaration were various gifts of pecuniary legacies for charitable purposes, amounting to $28,500, and also provisions for the payment of certain annuities. Special disposition and appropriation were made of her personal property, which consisted of household furniture, carriage and horses, a growing crop upon a farm, a small sum of cash in hand, some petty debts due her, and about sixty slaves, the latter constituting nearly nine-tenths of the value of the whole. Certain real estate was also to be sold, and the proceeds applied to a specific purpose. The will declared that if it should appear at her decease that the bequests exceeded the amount of funds left, the first five only (those to charities) should be curtailed until brought within the assets. The fund in the hands of B. was not more than sufficient to pay the legacies. *Held*, 1. That it was the intention of the testatrix that the legacies to charitable purposes and to pay annuities should be paid, but not from the proceeds of the personal property which she owned in her own right, and specifically appropriated. 2. That the will was an execution of the power, and it appointed the whole fund to her executors.

3. The "deed of explanation" (*infra,* p. 317) executed in 1845 was effectual, and its operation was to reduce the annuity charged upon the lands in the deed of 1839 proportionately as A. reduced the fund charged by her appointments or outlays, so as to make the annuity in each and every year equal to six per cent interest on so much of said fund as remained unappropriated or unexpended by her in each and every year respectively.

APPEAL from the Circuit Court of the United States for the Eastern District of North Carolina.

George Pollock, who was seised and possessed of a large estate, consisting of lands, slaves, and personal effects, died in 1839. He devised and bequeathed it all to his sister Frances, wife of John Devereux, by whom she had three children, Thomas P., George, and Frances Ann who intermarried with Leonidas Polk. George died leaving his children Elizabeth and Georgina surviving him, the former of whom is the wife of Grinfill Blake, and the latter of John Townsend.

On July 3, 1839, John Devereux and Frances his wife conveyed to Thomas P. Devereux in fee the real estate so devised subject, however, to charges as follows : —

" *First,* that the said Thomas P. Devereux, his heirs and assigns, shall, on the first day of March in each and every year during the life of the said Frances Devereux, pay to the said Frances, into her own hands, or according to her own order, and to her sole and separate use, and subject to her own disposal, as if she were a *feme sole* and unmarried, the yearly sum of $3,000."

" *Thirdly,* that the said Thomas P. Devereux, his heirs or assigns, shall invest for, or pay to, the said Frances, at such times, in such proportions, and in such manner and form as she shall direct and require, to and for her own sole and separate use, and subject to her own disposal by will, deed, or writings in nature thereof, or otherwise, to all intents and purposes (notwithstanding her coverture) as if she were a *feme sole* and unmarried, the sum of $50,000 ; but if the said sum of money, or any part thereof, shall remain unpaid, or shall not be invested during her life, and if the said Frances shall not by deed, or will, or writing in nature thereof, or by some other act give, grant, dispose, or direct any payment, investment, or application of the same, then the said sum of money, or so much thereof as shall remain not paid, given, granted, disposed, or directed to be invested, paid, or applied, shall be considered as lapsing, and the charge therefor as extinguished for the benefit of the said Thomas."

On the same day John Devereux also conveyed to said Thomas the personalty bequeathed by said Pollock.

John Devereux died in 1844, and in 1845 his widow executed a "deed of explanation," which, after referring to that of July 3, 1839, is as follows: —

"And whereas in and by the same the sum of $50,000 was secured to the said Frances, together with an annuity of $3,000; and whereas the annuity was by the said Frances understood to be the interest of the said sum of $50,000, and not in addition thereto, and was to abate as the principal of the said sum was from time to time paid; and whereas doubts have arisen whether the said deed may not bear a contrary construction, and the said annuity be chargeable on the said estate over and above the said $50,000:

Now, these presents are to declare that the true meaning and intent of the part of the said settlement above referred to is, that the sum of $50,000, with the annual interest thereon, was to be hereby reserved to the said Frances, and that the said interest was to cease *pro rata* as portions of the said principal sum were from time to time paid and discharged, in the same manner as if the same was a debt due by the said estate, and that no annuity except the said interest was intended to be reserved by the said settlement to the said Frances."

In 1849 she died. Her last will and testament, bearing date Dec. 23, 1847, was, after protracted litigation, admitted to probate in August, 1852. The first and introductory clause is as follows: —

"I, Frances Devereux, of North Carolina, . . . do make and ordain this my last will and testament, intending thereby to execute all powers vested in me, and enacted in any deed or deeds heretofore executed, particularly those powers created in my favor by two certain deeds settling and assuring the estate of my late brother, George Pollock, to my son, Thomas P. Devereux, dated some time in the month of July, in the year of our Lord eighteen hundred and thirty-nine, and executed by my late husband and myself."

She bequeathed by the first five items five legacies, of $4,000 each, to five several charitable institutions; by the sixth, $500 to her executors for a charitable purpose; by the eighth,

$7,500 to Thomas P. Devereux, in trust, to apply the income on the same annually to the payment of certain annuities and charities therein specified; by the twelfth, $500 to S. S. Souter, for a charitable purpose specified. There is no other pecuniary legacy, and no residuary devise or bequest. Thomas P. Devereux and others were appointed executors, but did not qualify as such. Seymour W. Whiting, who had been appointed administrator *pendente lite*, was, Nov. 16, 1852, appointed administrator *cum testamento annexo*. Her heirs-at-law and next of kin were her children, Thomas P. and Frances Ann, and her grandchildren, Elizabeth and Georgina. Her property at her death consisted of so much of the aforesaid $50,000 and the annuity of $3,000 per annum as she had not appointed or expended during her lifetime, upwards of sixty negro slaves, the growing crop and farming stock and utensils on her farm in Bertie County in that State, which she was cultivating jointly with a grandson, the household and kitchen furniture at her residence in Raleigh, and some small amount in cash on hand and petty debts due to her.

On March 26, 1859, the complainants, said Elizabeth and Georgina, filed their bill in equity against Thomas P. Devereux, Leonidas Polk and Frances Ann his wife, setting forth the foregoing facts, and further alleging that the said Thomas's pretended renunciation of his executorship, and the appointment of said Whiting as administrator with the will annexed, were as to the complainants wholly void and of no effect; that the said Thomas was accountable to them in equity, as executor, for their share of the assets of the said Frances remaining after the payment of her debts, funeral and testamentary expenses, and the legacies, which last, it was alleged, did not exhaust said assets, but left a large amount in his hands for distribution, to one-third of which they were entitled.

The bill alleges that said Thomas, both before and after his renunciation, intermeddled with her assets, and had the exclusive control and administration thereof; that he took possession of them immediately upon her decease, disposed of them from time to time, and converted them to his own use; especially that on or about the 7th of October, 1852, he, before the appointment of Whiting as administrator with the will

annexed, caused fifty-seven slaves belonging to her estate to be appraised and divided between himself and Frances Ann Polk; and that he had then in his possession, or in the possession of his attorney or agents, the original paper or a copy thereof, containing the details of said appraisal and division; that said Whiting was appointed by the procurement of said Thomas and as a mere form, the latter becoming his bondsman; that Whiting, if he acted at all in the administration of said' assets, did so entirely under the direction of said Thomas; that he never returned an inventory, nor rendered an account of his administration, and is now deceased; that said Thomas's renunciation was a contrivance to avoid being called to account; that he procured said renunciation to be accepted by a concealment and suppression of the facts above stated; that he purchased up the pecuniary legacies for about half their amount, and claimed for himself the profit derived therefrom; that he paid debts of the testatrix, and converted the residue remaining in his hands to his own use; and that her estate and effects were in fact administered and disposed of by him before the appointment of said Whiting in November, 1852.

The bill prayed for a discovery and for an account.

The defendants, Leonidas Polk and wife, entered an appearance, but neither demurred nor answered. The defendant Thomas filed his answer, admitting the main facts set out in the bill, but denying all fraud, and insisting that if, upon the proper construction of the deeds made to him, it is somewhat doubtful whether the yearly reservation of $3,000 was not intended to be a stipulation for the annual payment of the interest upon the sum of $50,000, such was the intention of said Frances, and if not expressed, it was a mistake in drafting them; that after the death of her husband she executed an instrument declaring such interpretation and intention; and that he is not liable to account for the said sum of $50,000, nor for the interest thereon, because she did not appoint the same by her will, and therefore the same lapsed for his benefit. He refuses to make any discovery, or to render any account of the same. He denies that he is accountable to the complainants as her executor; alleges that he renounced that office; denies that he intermeddled with the assets in any other manner than

as is set out in his answer; and in this connection gives an account of his purchase of the pecuniary legacies from the several charitable institutions, and of some of the dealings and accounts between himself and Whiting, while the latter acted as administrator *pendente lite*, and after he became administrator with the will annexed. He filed other exhibits, the proceedings connected with the *caveat* of the will, showing his purchase of the legacies, and his conveyance of part of her slaves to the trustee of Frances Ann Polk, all executed before Whiting was appointed. He also filed exhibits showing accounts rendered to him by said Whiting.

The complainants excepted to the sufficiency of the answer, because it failed to set out whether he had not divided fifty-seven slaves of the testatrix between himself and Frances Ann Polk, on the 7th of October, 1852, before Whiting was appointed, and a paper writing evidencing said division; because it failed to set out the disposition made of the $50,000 fund and the $3,000 annuity; because it did not set out the tenor and contents of certain paper writings, in reference to the management of that fund, which he admitted he had obtained from Whiting.

He thereupon further answered, refusing to account for the $50,000 charge and the $3,000 annuity, and to disclose the contents of the paper writings received from Whiting, because they referred to the management of the $50,000 charge; but he exhibited the paper writing evidencing the division of the fifty-seven slaves between himself and Frances Ann Polk.

The plaintiffs filed their replication at the November Term, 1859, but at the June Term, 1860, withdrew it, at request of said Thomas, who filed an amended answer, and the replication was then refiled.

At the November Term, 1860, no depositions having been taken, the cause was set down for hearing upon the pleadings, exhibits, and proofs.

Thomas P. Devereux having become a bankrupt, that fact was suggested, and William J. Hawkins and George W. Mordecai, his assignees, were made parties defendant.

Said Thomas having died, the suit was revived against R. C.

Badger, administrator *de bonis non, cum testamento annexo,* of Frances Devereux, deceased.

At the June Term, 1869, the court passed an order, referring the case to a master to state an account, 1, of the payments out of the annuity of $3,000, or out of the $50,000 in trust, to or by direction of Mrs. Devereux; 2, of the charitable bequests in the will, and of the sums actually paid in satisfaction or purchase of them; 3, of the balances, if any remaining, of the $3,000 and $50,000, after deducting the sums paid to her, or by her direction, during her life, and in satisfaction of legacies since her death; 4, also of the administration of her estate, showing the amount of assets (excluding balances, if any, of the $3,000 and $50,000), and of the debts paid, and the balance, if any.

At the November Term, 1873, the master filed his report.

At the June Term, 1874, the case having been heard upon the pleadings, exhibits, proofs, order of reference, and report of the master, and the exceptions filed thereto, the court decreed, —

1. That Frances Devereux did not by her last will and testament appoint the fund of $50,000, which, by the deed of July 3, 1839, conveying her lands to Thomas P. Devereux, she had power to charge upon said land, to be part of her general personal estate in the hands of her executors; nor appoint the said fund at all, except so far as it is necessary to resort to the same to pay off the pecuniary legacies bequeathed by her in her said will, after exhausting for that purpose what remains of her general personal assets, after payment of her debts and funeral expenses, and the costs of administering her estate.

2. That "the deed of explanation," executed by the said Frances in 1845, was effectual; and that the operation thereof was to reduce the annuity of $3,000 charged upon said lands, in said deed of 1839, proportionably as the said Frances reduced the aforesaid $50,000 by her appointments or outlays, so as to make said annuity, in each and every year, equal to six per cent interest on so much of said fund of $50,000 as remained unappointed or unexpended by the said Frances, in each and every year respectively.

3. That the plaintiffs are not entitled to any account of the said fund of $50,000, except so far as it is necessary to take an

account of the same to ascertain the amount of the aforesaid annuity, in each and every year during the life of the said Frances, but that they are entitled to an account of so much of said annuity as remained unexpended in the hands of Thomas P. Devereux at the date of the decease of the said Frances, and also to an account of so much and such parts of the general personal estate of the said Frances, including the negro slaves divided between the said Thomas P. and the defendant, Leonidas Polk, in October, 1852, as came to the hands of the said Thomas P. after the decease of the said Frances; but the said Thomas P. is not liable to account with the plaintiffs generally, as executor of the last will and testament of the said Frances, for all her personal estate; and especially is he not liable to account with them for so much, or such parts, of said personal estate as came into the hands of said Whiting, deceased, to be administered by him, either as administrator *pendente lite*, or as administrator *cum testamento annexo* of the said Frances.

4. That in taking the account with the estate of the said Thomas P., now in the hands of the defendants, who are his assignees in bankruptcy, the said assignees are to be credited with the amounts which the said Thomas P. expended in purchasing up the pecuniary legacies bequeathed by the said Frances to the several charitable societies, and the said assignees are not to be credited with the full amount of said legacies, unless or except where the said Thomas P. paid the full amount therefor.

5. That, in taking the account last aforesaid, the master shall regard the paper writing bearing date Oct. 2, 1846, signed by Frances Devereux, and accompanying the master's report, as an exhibit, as a stated account between the said Frances and Thomas P. Devereux, deceased, conclusive of all matters of account between them, both in respect to the $50,000 fund and the $3,000 annuity aforesaid, previous to and including the twenty-second day of June, 1846, excepting such matters of account as are, by the express terms of the said paper writing, saved out of its operation, for future adjustment, by reference or otherwise; ascertaining the balance due by the said Thomas P. to the said Frances, subject to the

exceptions and corrections last aforesaid, on the said twenty-second day of June, 1846, to be $29,664.60.

6. That in taking said account the master shall also regard the paper writing made out some time in the latter part of the year 1847, signed by William D. Cooke, and accompanying said report, as an exhibit, as a stated account between the said Frances and Thomas P. Devereux, deceased, conclusive of all matters of account between them, in respect to the $50,000 fund and the $3,000 annuity aforesaid, and all other matters, previous to and including the twenty-first day of June, 1847, saving such matters of account as are, by the note at the foot of said paper writing, expressly excepted out of its operation, for future adjustment, by reference or otherwise; ascertaining the balance due by the said Thomas P. to the said Frances, subject to the exceptions and corrections last aforesaid, on the said twenty-first day of June, 1847, to be $25,036.97.

The complainants having waived a re-reference to the master, the account was forthwith corrected, so as to conform to this decree, and a final decree entered, that the complainants recover $722.14 against the assignees in bankruptcy of T. P. Devereux, deceased; from which decree the complainants appealed to this court, and here assign the following errors: —

The court below erred, because, —

1. Under the circumstances of this case, Thomas P. Devereux, as the executor of said Frances, was liable to account with the plaintiffs for all her personal assets.

2. Her will was an appointment of the whole of the $50,000 charged upon the land, conveyed to him by deed of July 3, 1839, to be part of her general personal assets in the hands of her executors.

3. The instrument styled "the deed of explanation," executed by her in 1845, was ineffectual for any purpose, having no operative words of release or receipt: it was presumptively fraudulent for him, a trustee, to take it from his *cestui que trust*. It cannot be used even as evidence to correct the alleged mistake in the deed of July 3, 1839; and it in no manner affects the annuity of $3,000, so as to reduce the amount thereof.

4. As executor, he ought to be charged with all arrears of the whole of the $3,000 annuity, created by the deed of July 3,

1839, charged on his land, which were unexpended or unappointed by her at her death, as part of her personal assets in his hands.

5. In taking his account as executor, the paper writing bearing date Oct. 20, 1846, signed by her, which was not pleaded or set up in the answer, ought not to be regarded as a stated account, conclusive of all matters of account between him and her, before and including the 22d of June, 1846, the same being at most but her receipt or admission, affording only evidence of no very great weight, under the circumstances proved before the master, of the matters therein admitted.

6. In taking his account as executor, the paper writing bearing date in the year 1847, signed by William D. Cooke, which was not pleaded nor set up in the answer, ought not to be regarded as a stated account, conclusive of all matters of account between the said Thomas and the said Frances, before and including the twenty-first day of June, 1847, the same being, at most, only an admission by her agent, never intended as a memorial of, nor founded upon, an actual accounting by said Thomas.

*Mr. Samuel F. Phillips* for the appellants.
*Mr. A. S. Merrimon, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

It is a common remark, that, when interpreting a will, the attending circumstances of the testator, such as the condition of his family, and the amount and character of his property, may and ought to be taken into consideration. The interpreter may place himself in the position occupied by the testator when he made the will, and from that standpoint discover what was intended. *Brown* v. *Thorndike*, 15 Pick. (Mass.) 388; *Postlethwaite's Appeal*, 68 Pa. St. 477; *Smith* v. *Bell*, 6 Pet. 68. Such a method of procedure is, we think, appropriate to the present case.

Mrs. Devereux's will was made on the twenty-third day of December, 1847, about eighteen months before her death. There is no reason to believe there was any essential change in the nature or the amount of her property between the date of her making the will and her decease, and it may fairly be assumed that what she had in June, 1849, the time of her

death, she had when she made her testamentary disposition. At that time her personal property consisted of her household furniture, her carriage and horses, a growing crop upon a farm she was cultivating jointly with her grandson John Devereux, a small sum of cash in hand, some petty debts due to her, and about sixty slaves. The slaves, as appears in a subsequent appraisement, constituted the principal part in value, very nearly, if not quite, nine-tenths of the whole. In addition to this, she owned a house and lot in Chapel Hill, which she directed to be sold ; and she had a power to appoint the unappropriated balance of a fund of $50,000 then in the hands of her son, Thomas P. Devereux. Such was the property of which she attempted to make a disposition. Her will commenced with a declaration of her intention " thereby to execute all powers vested in (her) and enacted in any deed or deeds theretofore executed, particularly those powers created in her favor by two certain deeds settling and assuring the estate of her late brother, George Pollock, to (her) son, Thomas P. Devereux, dated some time in the month of July, in the year of our Lord eighteen hundred and thirty-nine, and executed by her late husband and herself." This was followed by her testamentary dispositions. By the first five she gave five legacies of $4,000 each to five several charitable institutions, to each an equal sum. By the sixth item she bequeathed $500 to her executors for a charitable purpose. By the eighth she bequeathed $7,500 to her son, Thomas P. Devereux, to apply the income annually to the payment of certain annuities and charities therein specified; and by the twelfth item she bequeathed $500 for another specified charity. The will contains no other gifts of pecuniary legacies. The aggregate of these is $28,500. Special dispositions are made of her slaves, horses, cattle, hogs, crops, and farming utensils, and of the proceeds of the sale of her house and lot in Chapel Hill, — generally, indeed, of all that she possessed in her own right.

Whether this will was an execution of the power reserved to her by the deed to her son, referred to in the introductory clause, — whether it was an appointment of so much of the sum of $50,000 made subject to her appointment by the deed, as remained undisposed of by her, is the most important question we have now to consider. It must be admitted that the

avowal by the testatrix in the introductory clause of her will of her purpose thereby to execute the power was not itself an execution. It is important only as it may shed light upon the subsequent dispositions. A previously expressed intention may serve to explain language afterwards used, and show what its meaning is; but it is one thing to intend a future act, and quite another to carry out that intention. While it is true that whether a power has been executed or not is a question involving a consideration of the intent of the donee of the power, it is equally true the intention must be found in the acts or dispositions of the donee, and not alone in any previously expressed purpose. Prior to the English Statute of Wills (1 Vict. c. 26), — which, so far as it relates to appointments by will, has been enacted in North Carolina, — certain things had been generally accepted as indicative of an intention to execute a power, and as sufficient indications. As expressed in repeated decisions, these were : *first*, some reference to the power in the will or other instrument; *second*, some reference to the power or subject over which the power extends; and, *third*, where the provisions of the will or other instrument executed by the donee of the power would be ineffectual or a mere nullity, or would have no operation if not an execution of the power. The first of these indications, however, must be understood as a reference to the power in the dispositions actually made. In *Lowson* v. *Lowson* (3 Bro. C. C. 272), a will expressed to have been made in pursuance of a power which the testator had, was held by the Lord Chancellor not to have been an execution thereof, because the subsequent dispositions were apparently applicable only to his own estate. It may be remarked that Sir Edward Sugden expresses doubts of the correctness of this decision, for the reasons given by Lord Thurlow; but he still lays down the rule, that "although a will be expressed to be made in pursuance of the power, yet if the testator appears to dispose of his own property only, the power will not be executed by the will." Sugden, Powers (2d Am. ed.), 364. On the other hand, if the will contains no expressed intent to exert the power, yet if it may reasonably be gathered from the gifts and directions made that their purpose and object were to execute it, the will must be regarded as an execution. After all, an appoint-

ment under a power is an intent to appoint carried out, and if made by will, the intent and its execution are to be sought for through the whole instrument.

Turning now to the will we have before us, two things are evident. The first is, that the testatrix did not intend that the pecuniary legacies given for charitable purposes, and to pay annuities, should be satisfied out of her own personal property; and the second is, that she did intend that those legacies should be paid. Substantially all her own property she devoted to other uses. Her horses, cattle, hogs, &c., crops and farming utensils, her carriage, wagon, and all personal property except negroes, in the possession of her grandson, John Devereux, she directed to be sold, and the proceeds applied to the payment of her debts; and she appears to have doubted whether they would be sufficient. Her house and lot in Chapel Hill she ordered to be sold, and directed the sum paid for it to be invested in some productive stock, ordering, however, a payment out of it, and out of the funds arising from the sale of some negroes, to satisfy an annuity of $150 during a life or lives. By these specific appropriations she negatived any right to apply these funds to the payment of the pecuniary legacies mentioned in the first, second, third, fourth, fifth, sixth, eighth, and twelfth items in the will. Nothing of her own personal property, of any considerable value, remained, except her slaves. Six of them she specifically bequeathed. One she ordered to be sold, devoting the proceeds to the distribution of tracts and religious books, and three others were directed to be sold at private sale, and a portion of the avails, if not all, she appropriated to the payment of an annuity. The remainder of her slaves she provided might be taken at a valuation by her son-in-law and grandson, upon their giving bonds for payment of the appraised value in ten annual instalments. These bonds, of course, could not be applied to the discharge of the pecuniary legacies as they fell due. Thus it appears that while she gave pecuniary legacies amounting in the aggregate to more than $28,000, she carefully withdrew from any positive application to their payment the personal estate she owned in her own right. It seems necessarily to follow that, if she intended those legacies to be paid at all, she intended them to

be paid out of the fund over which she had the power of appointment. This appears from the testamentary dispositions themselves, independent of any reference to the intention to execute her power, avowed in the introductory clause in the will. And that avowal tends to support the conclusion. It is significant, also, that after she had made a specific disposition of all her own property inconsistent with any application of it to paying those legacies, she refers to their payment again, and uses this language: "Should it appear at my decease that the bequests exceed the amount of funds left, my will is that the first five only shall be curtailed, until brought within the limits of the assets." This provision was a reasonable one, in view of the uncertainty there was in regard to the amount remaining of the funds of which she had the power of appointment. We conclude, therefore, that Mrs. Devereux's will was an execution of the power, and an appointment of the fund to her executors. It converted the fund into her own estate, at least to the extent of $28,500, if there was so much of it remaining.

We have considered the case thus far without reference to the North Carolina statute of 1844–45, which is similar to the act of 1 Vict. c. 26 (Rev. Code of N. C., c. 85, sect. 5), for the reason that it may be doubted whether that statute is applicable to this will. Here there is no bequest of personal property described in a general manner, nor even a general residuary bequest, though there are general pecuniary legacies.

Whether, if the fund which remained in the hands of Thomas P. Devereux at the death of the testatrix had exceeded the sum required to pay the legacies given by her will, — that is to say, the sum of $28,500, — the will would have been a complete execution of the power, covering the whole fund, or only a partial appointment of so much as was needed to pay those legacies, it is unnecessary for us now to decide. In the view which we take of the other questions involved in the case, that fund had been reduced so far that there was not more than enough remaining subject to the power to pay the sums bequeathed by the will. The execution was therefore complete, and it appointed the whole fund to the executors of this will, who took it under the appointment as part of the

personal estate of the appointor.  Upon this subject see *Milday* v. *Barnet*, Law Rep. 6 Eq. 196; *Hurlstone* v. *Ashton*, 11 Jur. N. S. 724; *Hawthorn* v. *Shedden*, 3 Sm. & G. 293.

There was, therefore, error in the decree of the Circuit Court so far as it adjudged that the testatrix, Frances Devereux, did not appoint to her executors the fund over which she had the power of appointment, " except so far as it is necessary to resort to the same to pay off the pecuniary legacies bequeathed by her in her said will, after exhausting for that purpose what remains of her general personal assets after payment of her debts and funeral expenses, and the costs of administering her estate."

The other questions raised by the appeal require a less extended consideration.  The Circuit Court decreed that the " deed of explanation " executed by Mrs. Devereux in 1845 was effectual, and that its operation was to reduce the annuity of $3,000 charged upon the lands in the deed of settlement of 1839, proportionably as she reduced the $50,000 charged by her appointments, or outlays, so as to make the annuity in each and every year equal to six per cent interest on so much of said fund as remained unappropriated or unexpended by her in each and every year respectively.  This, we think, was correct.  In 1845 she was *sui juris.*  Her husband had died, and she was competent to release whatever rights she had under her deed to Thomas P. Devereux, or to appropriate to him any portion, or even the whole, of the fund of $50,000 then remaining.  The deed of settlement gave her power to dispose of the fund, to give, grant, or direct its payment, investment, or application, at her discretion.  If, therefore, there was no mistake in the deed, the subsequent paper ought to be regarded as a release *pro tanto* of her right to the annuity, and a partial disposition of the fund over which she had the power.  If there was a mistake in the deed, it was quite competent for her to rectify it by agreement; and her " deed of explanation " was a solemn acknowledgment under her seal of the mistake, as effective in equity, if properly obtained, as would have been the decree of a chancellor reforming the instrument. We see not enough in the relation of the parties to each other to justify any presumption that undue influence was exerted over her.  The deed of 1839 exhibits the fact that a possi-

ble benefit to her son was even then contemplated. It provided that whatever of the $50,000 fund the mother should not dispose of should lapse for his benefit. It was quite natural, therefore, for her to execute a declaration for his relief.

What we have said disposes of the fourth assignment of error, and shows that it is not sustained.

It is next objected by the appellants that the court erred in directing the paper dated Oct. 20, 1846, and signed by Mrs. Devereux, to be treated as a stated account between her and her son, conclusive of all matters of account between them previous to and including the 22d of June, 1846, respecting the $50,000 fund and the annuity, excepting such matters as are by its express terms excepted out of it and reserved for future adjustment. The paper was, in fact, an account stated by a third person, selected by both parties, agreed to be correct by Mrs. Devereux, except in four particulars reserved for subsequent arbitrament. It bears on its face evidence that it was carefully examined and fully understood. After such examination it was signed, and there is no evidence that Mrs. Devereux ever afterwards questioned its correctness. On the contrary, she, in substance, ratified it and acknowledged its correctness at least twice, more than a year afterwards. It is difficult, therefore, to see why it should not be regarded as the Circuit Court directed it to be. It is urged on behalf of the appellants that because the statement was not pleaded, nor set forth in the answer, the defendants were precluded from making use of it when ordered to account. This is overlooking the fact that it was not a bar to all claim for an account. Thomas P. Devereux's liability to account, if it existed at all, continued after the statement was made, to the extent of all subsequent transactions, and for the balance ascertained by it to be due June 22, 1846. It is not set up as a full accounting, but as a partial settlement. It would have been no answer to the complainant's bill if Thomas P. Devereux had said, I have accounted up to June 22, 1846. He denied his liability to account at all; and it was only when that was adjudged against him that he could avail himself of the fact that he had partially accounted, and that fact he could use only in stating the account ordered. We may add that we see nothing in the

circumstances attending the statement sufficient to cast suspicion upon it, or to call upon the defendants to support it by extraneous proofs. The relation between Mrs. Devereux and her son, created by the deed of 1839, was more like that of debtor and creditor than that of trustee and *cestui que trust.* It was no relation of confidence reposed. Similar remarks may be made respecting the second statement, which ascertained the balance due from June 21, 1847. The decree of the court respecting its effect was right.

The remaining exception to the decree of the court is that it denied the liability of Thomas P. Devereux to account, as executor of the last will and testament of Mrs. Devereux, for " all her personal estate, especially for so much as came into the hands of Seymour W. Whiting as administrator *pendente lite* or *cum testamento annexo.*" We think this part of the decree was correct. He was required to account for all the estate that came to his hands ; and correctly so required, for he had made himself an executor *de son tort* by intermeddling with the estate of the testatrix, and by taking most of it into his possession, and undertaking to dispose of it. But he never qualified as executor of the will, or administrator *cum testamento annexo,* nor was he even administrator *pendente lite.* As such, therefore, he did not become responsible, and as executor *de son tort* he was only liable for what came into his hands. *Mitchell* v. *Lunt,* 4 Mass. 653 ; *Kinard* v. *Young,* 2 Rich. (S. C.) Eq. 247 ; *Leach* v. *House,* 1 Bailey (S. C.), 42. This is clear, upon both reason and authority.

Our conclusion, therefore, is, after reviewing the whole case, that there has been no error committed, except the single one which we first noticed. For that, however, the decree of the Circuit Court must be reversed, and the case sent back with instructions to direct a new accounting, and to enter a decree in conformity with this opinion ; and it is

*So ordered.*