# CRUIT v. OWEN.

---

## WILLS; TRUSTS AND TRUSTEES

1. The intent of the testator is the first great rule in the interpretation
   of wills. (Following *Earnshaw* v. *Daly*, 1 App. D. C. 218; *De Vaughn*

v. *De Vaughn*, 3 App. D. C. 53; and *Holcomb* v. *Wright*, 5 App. D. C. 83.)

2. When interpreting a will the attending circumstances of the testator, such as the condition of his family and the amount and character of his property, may be and ought to be taken into consideration. The interpreter may place himself in the position occupied by the testator when he made the will, and from that standpoint discover what was intended.

3. In construing a will the whole will must be read together, and each term employed given its full natural meaning; and no words of the testator should be rejected or refused their sensible meaning in the place where employed, unless it be required to make sense for the context of the will. (Following *De Vaughn* v. *De Vaughn*, 3 App. D. C. 53.)

4. A testator, after devising his entire estate in trust for his wife for life and after her death to his four daughters, and after their death to their child or children, if any, in fee simple, such child or children to take the share of his or her parent, then provided that if any of his daughters should die unmarried her share should pass to "her or their surviving sisters or sister for life equally, and upon her or their death shall vest in her or their children in the same manner and for the same estate, and pass on her or their death as her or their original share or shares." The widow and three of the daughters died,—two of the daughters unmarried, and the other married leaving children. In a bill by the children against their unmarried aunt to construe the will, it was *held* that the complainants took their mother's share and became entitled to one half of the income from her death, she having survived two of her unmarried sisters, the defendant being entitled to the other half; and that the equitable remainder of the whole estate was vested in the complainants as remaindermen, and their heirs, subject to have the title opened to let in any after-born child or children of the defendant.

5. Where the will in such a case directed that, upon the death of the trustee, a new one should be appointed by the circuit court, and the original trustee was dead, it was *held* that it was the duty of the lower court to appoint a new trustee.

No. 1506. Submitted April 18, 1905. Decided May 2, 1905.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia in a suit in equity to construe a will.                          *Affirmed.*

The COURT in the opinion stated the case as follows:

This appeal involves the correctness of the construction by the court below of the will of one Robert Cruit, who died November, 1861, leaving him surviving a wife, Catherine Cruit, and four daughters, Catherine E., then the wife of Samuel Owen, and three unmarried daughters, Susan, Ann, and Louisa. The will, executed September 1, 1858, was duly admitted to probate, and Susan, to whom the estate was left in trust for certain purposes which will be hereafter stated, entered upon the administration of the estate and had charge of the same until her death, which occurred December 31, 1900. The widow died May 13, 1876; Louisa died January 2, 1876, and Catherine E. Owen died May 14, 1901. Susan and Louisa never married, nor has Ann up to the present time. Catherine E. Owen left her surviving three daughters, Evanina F. Mackall and these appellees, Kate D. Owen and Jessie Owen Cugle.

The will, in respect to which the controversy has arisen, is as follows:

"This is the last will and testament of me, Robert Cruit, of the city of Washington in the District of Columbia.

"First. I give to my two nephews Edwin Cruit, the son of George, and Henry, the son of John L. Cruit, the legacy of one hundred dollars, to each of them, to be paid as soon after my death as may be. And all the rest, residue, and remainder of my estate,—real, personal, and mixed,—whatsoever and wheresoever situated, I give, devise, and bequeath unto my dear daughter Susan Cruit, her heirs, executors, and administrators upon the following trusts, to wit: In trust for my dear wife, Catherine, for and during her life, and to permit her to receive and take the whole income thereof after paying taxes, repairs, and insurance, and to apply and dispose of such net income as she, my said wife, may think proper, and from and after her decease, in trust, as to my real estate for my dear daughters Catherine E., the wife of Samuel Owen, Ann Cruit, Louisa Cruit, and herself, the said Susan Cruit, equally share and share alike, for and during their respective lives, for their own sole and

separate benefit, free from the control of the husband of my said daughter Catherine, and any husband or husbands she or my said other daughters or any of them may hereafter happen to marry, and not to be liable in any way for the debts of any such husbands, the receipts of my said daughters alone being a valid discharge.   And from and after their death in trust for the child or children of each of my said daughters then living in fee simple, such child or children respectively to take the share to which his, her, or their parent was entitled.   And if any of my said daughters shall die without having been married, her share shall pass to her or their surviving sisters or sister for life equally; and upon her or their death the same shall vest in her or their child or children in the same manner, and for the same estate, and pass on her or their death, as her or their original shares or share.   And as to my personal property, also given in trust as above expressed, I direct that the same shall, after the death of my said wife, be divided equally among all my said children, Catherine, Susan, Ann, and Louisa, share and share alike, and I accordingly give the same to them as aforesaid for their own sole and separate use.

"And lastly I appoint my said daughter Susan Cruit sole executrix of this my last will and testament.   And if my said daughter shall die or from any cause should become unable to act in the trust, I direct that a trustee shall be appointed by the circuit court so that the trusts hereby created shall be at all times preserved and carried into effect.

"In testimony whereof I have hereunto set my hand and seal this first day of September in the year one thousand eight hundred and fifty-eight.                    Robert Cruit. [L. S.]"

The present value of the real estate is admitted to be over $100,000, and produces an income of some $11,000 or $12,000. The cause was heard upon the amended bill and the answers thereto of all of the defendants, and upon certain testimony which is of little or no value as an aid to the decision of the questions involved on the appeal.   The court below decreed that under the terms of the will, the plaintiffs, Kate Dean Owen and Jessie Owen Cugle, and the defendant, Evanina F. Mackall,

were, and are now, entitled to receive one half of all of the net rents, revenues, and income arising from and out of the real estate devised by said last will and testament and mentioned in the bill of complaint, from, since, and after the death of their mother, Catherine E. Owen, to wit, from, since, and after the fourteenth (14th) day of May, nineteen hundred and one (1901), and being the same proportion of all of the said net rents, revenues, and income which their said mother, the said Catherine E. Owen, was entitled to receive at the time of her death; that the said defendant, Ann E. J. Cruit, was and is entitled to receive during her life, from, since, and after the said fourteenth (14th) day of May, nineteen hundred and one (1901), the other and remaining one half of said net rents, revenues, and income arising from and out of said real estate, and that the equitable title in remainder of all of the real estate devised by said last will and testament is now vested in the plaintiffs, Kate Dean Owen and Jessie Owen Cugle, and the defendant Evanina F. Mackall, as remaindermen, and their respective heirs; subject to have the said title opened to let in any after-born child or children, if any, of the defendant Ann E. J. Cruit, and subject also to the right of the said Ann E. J. Cruit to receive during her life one half of the net rents, revenues, and income derived from said real estate as hereinbefore decreed, under the provision of said last will and testament.

The decree also appointed trustees under the will in place of Susan Cruit, deceased, the trustee named therein, and enjoined the appellant from thereafter collecting and receiving the rents and income of and from the property. Ann E. J. Cruit appealed, assigning the following grounds of error:

1. The court below erred by its decree that under the provisions of the will of Robert Cruit the said Kate Dean Owen, Jessie Owen Cugle, and Evanina F. Mackall were and are from the death of Catherine E. Owen entitled to receive one half of the net rents, revenues, and income arising from and out of the real estate devised by said last will and testament, and in not decreeing that the appellant was entitled to the whole of said rents, revenues, and income.

2. The court below erred in construing said will so that from and after the death of her sister, Catherine E. Owen, the appellant became entitled to receive no more than one half of the said net rents, revenues, and income.

3. The court below erred in not holding that Ann E. J. Cruit had an estate in fee simple in said real estate to the extent, at least, of one undivided half thereof.

4. The court below erred in its decree by placing the share and estate of the appellant in said real estate in the hands of trustees, as in said decree provided, and in its injunction against the appellant as in said decree contained.

5. The court below erred in requiring the appellant in this cause to account for and pay one half of the rents which she may have collected since the death of Catherine E. Owen, prior to the appointment of said trustees, to them or to any person, and in distributing said rents as provided in said decree.

*Mr. Edward H. Thomas* for the appellant.

*Mr. Chapin Brown* and *Mr. J. P. Earnest* for the appellees.

Mr. Justice DUELL delivered the opinion of the Court:

The parties are in accord in stating that the intent of the testator is the first and great rule in the interpretation of wills. All courts have for years recognized this rule, and this court since its inception has followed it. *Smith* v. *Bell,* 6 Pet. 68, 8 L. ed. 322; *Adams* v. *Cowen,* 177 U. S. 471, 44 L. ed. 851, 20 Sup. Ct. Rep. 668; *Earnshaw* v. *Daly,* 1 App. D. C. 218; *De Vaughn* v. *De Vaughn,* 3 App. D. C. 53; *Holcomb* v. *Wright,* 5 App. D. C. 83. Particularly applicable to the case at bar is the statement of the Supreme Court in *Blake* v. *Hawkins,* 98 U. S. 315–324, 25 L. ed. 139–141, quoted by counsel for the appellant, that—

"It is a common remark that, when interpreting a will, the attending circumstances of the testator, such as the condition of his family, and the amount and character of his property,

may and ought to be taken into consideration. The interpreter may place himself in the position occupied by the testator when he made the will, and from that standpoint discover what was intended."

Let us, then, put ourselves as nearly as possible in the position of the testator at the time of the execution of the will, and review the facts and surrounding circumstances, and little trouble will be found in fairly and correctly construing his will. In the fall of 1858 the testator was the owner of valuable real estate situated in the capital city of a rapidly growing country. His family consisted of his wife and four daughters, three of whom were unmarried, and the fourth then living with her second husband and being the mother of two female children. Naturally it was his desire to provide for his wife, his daughters, and such children as they had or might have. Such is the desire of every right-minded man bearing the relation to others of husband, father, and grandfather. There is no reason for inferring that any but the most loving relations existed between him and the various members of the family, for he refers to all whom he specifically names in the ordinary terms of endearment. His property consisted largely of real estate situated in a section of the city which required no more than ordinary foresight to see would naturally increase in value as the city grew, as the capital city of a great and growing nation necessarily must. The growth and consequent increase in value might be slow, but it was sure. Furthermore, all those living to whom he owed a natural duty were females. One was married, and for her husband it is easily spelled out that he did not wish him to have any control over the property. The other three daughters might marry, and of their possible husbands he could know nothing. Such were "the condition of his family and the amount and character of his property." What would be the natural disposition of his property? What would any well-minded man do with real estate so situated, with a living wife and descendants, all of the female sex, three of his daughters unmarried, and the daughters of the married daughter infants? Certainly he would desire to provide for his wife an ample support and leave

her as the head of the family, to whom the children would look for their support, the grandchildren, such as there were or might be, in turn looking to their mothers for their support. Seeing the probable enhancement of value of the real estate, and in order to prevent a dissipation of the property, and to make a provision for the support of all, with homes in the city and country, he would tie up the real property so that all of these objects might be secured. He would, in carrying out these objects, provide that the husband of the married daughter, and the possible husbands of the unmarried ones, should have no control over or rights in any of his property. He would vest a life interest in the income of his property for his wife and daughters, with a remainder over to any grandchildren, so that the real property might go intact to them, and not by wills made by any of his daughters pass into alien hands.

It is the contention of the appellees that such was the intention of their grandfather, and that the will clearly sets forth such intention. The court below substantially so found, and it becomes our duty to determine whether, in our opinion, such contention and decision are correct.

In considering the questions involved, we must, as we said in *De Vaughn* v. *De Vaughn,* 3 App. D. C. 53, "read the whole will together, and give to each term employed its full and natural meaning; and no words of the testator should be rejected or refused their sensible meaning in the place where employed, unless it be required to make sense for the context of the will."

Turning now to the will, it is plain, as is admitted by all the parties, that the real estate passed in trust to the daughter Susan, who was to pay the net income to the testator's widow Catherine, who had the undisputed right to dispose of it as she saw fit; that at her death, which occurred in May, 1876, the income was to be paid, share and share alike, to the surviving daughters. Louisa having died the previous January, unmarried and without children, the net income would be divided in three parts, and this would continue until the death of another daughter. Such event occurred December 31, 1900, when Susan, also without children and unmarried, died. From that time on

the net income would be divided in two parts, one going to Mrs. Catherine E. Owen and the other to the appellant. May 14, 1901, Catherine E. Owen died, leaving her surviving three daughters, who took their mother's share, which at that time was one half of the net income. It seems to us that it could not have been the intent of the testator that, after the condition had arisen under which one daughter was clearly entitled to one half of the net income, upon her death her surviving children should not take her entire interest. It was not the testator's intention, as we gather it from the will, that upon the happening of that event, one half of the net income received by the deceased daughter should revert to her surviving sister and only the other half (or one fourth of the entire net income) go to her surviving children. We think it requires a strained construction to be placed upon the words of the will to force any such conclusion. The clause, "And if any of my said daughters shall die without having been married, her share shall pass to her or their surviving sisters or sister for life equally; and upon her or their death the same shall vest in her or their child or children in the same manner, and for the same estate, and pass on her or their death as her or their original shares or share," is unambiguous and can but mean one thing. That is, that when Louisa died, without issue, her interest passed to Susan, Ann, and Catherine; that when Susan died, without issue, her interest passed to Ann and Catherine; and that when Catherine died, leaving surviving children, her then interest, which was a one-half interest, passed to such children. To hold otherwise would defeat the intent of the testator as indicated by clear and apt words.

The plea of counsel for the appellant that the testator intended to give to the child or children of any married daughter the original share of such daughter had all the daughters survived the widow, and not the share that such married daughter was enjoying at the time of her death, is one that fails to impress us as being founded on anything but a technical nicety. The intent of the testator is to be gathered from a fair and reasonable interpretation of the language of the will. Thus, considering the terms employed, they mean that the entire in-

terest of every nature that was vested in Catherine Owen at the time of her death passed to her daughters. It is only when an attempt is made to give a technical meaning to the word "their," as used in the phrase "their death," in the clause preceding the one we have quoted, that any difficulty of construction can arise. It is giving it a too technical meaning to construe it, when taken in connection with the following clause of the will, to mean that it refers to the death of all rather than to the death of each respectively. The testator was dealing with a known condition, and not with a theory. He was employing ordinary words with their natural import, and not expecting that one word here and another there would be picked out and used to destroy his intention, as evidenced by taking the will as a whole. It is only when ultra refinement of expression is insisted upon that any ambiguity arises, and it naturally follows that when the construction of the will is approached from that standpoint that a half dozen interpretations can be placed upon it, as insisted by counsel for the appellant. We see no need, in construing this will, to wander afield and become lost in a maze. Nor does it seem necessary for us to cite authorities or distinguish between conflicting, or seemingly conflicting, decisions in order to arrive at a correct decision. Approached from a common-sense standpoint, the intent of the testator is clear and is as found by the court below.

Equally clear is it, in our opinion, that there is at the present time a trust estate, and that under the will it was the duty of the court below to appoint a trustee to take the place of Susan, the will expressly providing for such appointment when it directs: "And if my said daughter shall die, * * * I direct that a trustee shall be appointed by the circuit court so that the trusts hereby created shall be at all times preserved and carried into effect."

The assigned grounds of error are not well founded. It follows that the court below having made no error in its decree, it should be affirmed, with costs, and it is so ordered. *Affirmed.*

An appeal to the Supreme Court of the United States was allowed May 9, 1905.