# WARNER and Others *v.* CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF ILLINOIS.

Argued November 13th, 1883.—Decided November 26th, 1883.

### *Mortgage—Power.*

A husband and wife join in a mortgage of the wife's real estate to secure a debt of the husband contracted simultaneously with the execution of the mortgage. The wife dies before maturity of the debt, leaving a will devising all her estate to her husband in trust to enjoy the income during his life, with remainder to her children at his decease :—*But provided,* That said Cyrenius Beers may encumber the same by way of mortgage or trust deed or otherwise, and renew the same for the purpose of raising money to pay off any and all encumbrances now on said property, and which trust deed or mortgage so made shall be as valid as though he held an absolute estate in said property. The will appointed the husband as sole executor, and waived all security: *Held,* that the executor was empowered by the will to extend the mortgage debt at maturity without notice to the devisees of the remainder, and without affecting the mortgage security.

The husband, on the maturity of the debt secured by the mortgage, extended it by an instrument which did not refer to the will, or to the power which it conferred : *Held,* that, under the circumstances, it was to be construed as an execution of the power.

Bill to foreclose a mortgage, and cross-bill to have the mortgage set aside. The appellees filed the bill as plaintiffs in the court below, against the appellants and one Charles G. Beers, their brother, and against other parties, to foreclose a mortgage on real estate in Chicago. The appellants filed in that suit their cross-bill, setting forth their title to the mortgaged property, alleging that the mortgage was a cloud upon it, and praying a decree for the discharge of the mortgage. The controversy arose on the following facts :

On the 24th February, 1869, one Cyrenius Beers borrowed of the insurance company, appellees, $20,000, and executed and delivered to them his bond conditioned for the payment of that sum, with interest, payable semi-annually, at the rate of eight per cent. per annum. On the same day Beers and Mary Beers, his wife, duly executed and delivered the mortgage in contro-

versy, to secure the payment of that debt. The title to the mortgaged estate was in the wife, and was so described in the mortgage. In the following October the wife died, leaving a will, which was duly admitted to probate in March, 1872, and of which the following is a copy:

"I, Mary Beers, wife of Cyrenius Beers, of Chicago, of lawful age and sound mind, in view of the uncertainty of human life, do make, publish and declare this my last will and testament.

"First. I order all of my debts to be paid, including the expenses of my funeral and last illness.

"Second. I give and bequeath to my husband, Cyrenius Beers, all the estate, both real, personal, and mixed, of which I die seized or possessed, to be held by him in trust for the following uses, purposes, and trusts, and none other, that is to say, to receive the rents, income, and profits thereof during his life, with the remainder to my children, Mary C. Foster, wife of Orrington C. Foster, Rissa J. Beers, and Charles G. Beers share and share alike to them, their heirs and assigns forever.

"But provided, That said Cyrenius Beers may encumber the same by way of mortgage or trust deed or otherwise, and renew the same for the purpose of raising money to pay off any and all encumbrances now on said property, and which trust deed or mortgage so made shall be as valid as though he held an absolute estate in said property.

"But provided further, That the said Cyrenius Beers may, in his discretion, during his life, sell and dispose of any or all of the real estate of which I may die seized or possessed, as though he held an absolute estate in the same, and out of the proceeds pay any of the encumbrances upon any of the property of which I may die seized and possessed, and the remainder over and above what may be required to pay the indebtedness upon said property, the same being now encumbered, to reinvest in such way as he may see proper, and from time to time to sell and reinvest, such reinvestment to continue to be held in trust, the same as the estate of which I may die possessed; that is to say, the said Cyrenius Beers only to have the use during his life of said estate, with the right of sale and to encumber and reinvest, the remainder after his death to go to my children and their heirs forever.

" Third. I hereby appoint said Cyrenius Beers executor of this my last will and testament, hereby waiving from him all bail and security, as I have a right to do under the statute in such cases made and provided, as such executor.

" In witness whereof I have hereunto set my hand and seal this fourteenth day of September, in the year of our Lord one thousand eight hundred and sixty-nine.

"MARY BEERS. [SEAL.]

" The above instrument, consisting of three pages, was, at the date thereof, declared to us by Mary Beers, the testator therein mentioned, to be her last will and testament, and she at the same time acknowledged to us, and each of us, that she had signed and sealed the same, and we thereupon, at her request, and in her presence, and in the presence of each other, signed our names thereto as attesting witnesses.

" SAMUEL BEERS,     [SEAL.]
" GEORGE T. BEERS,     [SEAL.]
    " *Witnesses.*"

Cyrenius Beers, the husband, accepted the trust, and duly qualified as executor and administered upon the estate, and was discharged on the 20th September, 1877.

When the debt secured by the mortgage matured on the 24th February, 1874, it was not paid; but instead thereof Beers on that day entered into a written agreement with the company, in which, after reciting the execution of the bond, and that it was wholly unpaid, and the execution and delivery of the mortgage " by the said Cyrenius Beers and Mary his wife," " to secure the payment thereof," it was agreed as follows:

"Now, this memorandum witnesseth that the said The Connecticut Mutual Life Insurance Company, in consideration of the covenants and agreements on the part of the said Cyrenius Beers hereinafter contained, the prompt and faithful performance whereof is a condition precedent hereto, and time being the essence of this contract, doth hereby extend and postpone the time of payment of said principal sum of twenty thousand ($20,000) dollars in the condition of said bond mentioned until

the twenty-fourth day of February, which will be in the year of our Lord one thousand eight hundred and seventy-nine, interest to be paid thereon at and after the rate of nine per centum per annum, half yearly, in the same manner and at the place or places in the condition of said bond mentioned.

"And the said Cyrenius Beers, in consideration of such extension of the time of payment of said principal sum, doth hereby convenant, promise, and agree to and with the said The Connecticut Mutual Life Insurance Company, its successors and assigns, that he will well and truly pay the said The Connecticut Mutual Life Insurance Company, its successors and assigns; said principal sum of twenty thousand ($20,000) dollars, on the twenty-fourth day of February which will be in the year of our Lord one thousand eight hundred and seventy-nine, at the place in the condition of said bond mentioned, and also interest thereon at the rate of nine per centum per annum half yearly, to wit, on the twenty-fourth day of each of the months of August and February, which will be in each and every year during such extended time of payment, according to the tenor and effect of the ten (10) coupons or due-bills signed by said Cyrenius Beers, bearing even date and given herewith ; it being expressly understood and agreed by and between the parties hereto that in the event of a failure to pay either or any of said coupons at maturity then, at the election of said The Connecticut Mutual Life Insurance Company, its successors or assigns, the whole of said principal sum of twenty thousand ($20,000) dollars in the condition of said bond mentioned shall thereupon at once become due and payable, and may be collected without notice, together with all arrearages of interest thereon, in the same manner as if said extension had never been granted.

"It is further expressly understood by and between the parties hereto that nothing herein contained shall operate to discharge or release the said Cyrenius Beers, his heirs, executors, or administrators, from their liabilities upon said bond, but it is expressly understood that this instrument is to be taken as collateral and additional security for the payment of said bond.

"It is also expressly understood and agreed by and between the parties hereto that in the event of a failure on the part of the said Cyrenius Beers, his heirs, legal representatives, and assigns, to fulfil, keep, and promptly perform, as well in spirit

as in letter, the covenants in the said mortgage contained, given by said Cyrenius Beers to said company, then, at the election of said The Connecticut Mutual Life Insurance Company, its successors or assigns, the whole of said principal sum in the condition of said bond mentioned shall thereupon at once become due and payable, and may be collected without notice, together with all accrued interest thereon at said rate of nine per centum per annum, anything hereinbefore contained to the contrary notwithstanding."

Cyrenius Beers died intestate in February, 1878, leaving the mortgage debt still due and unpaid.

The appellants and Charles G. Beers, one of the defendants in the original suit, were his heirs. They were also the children and devisees of the said Mary Beers. Charles G. conveyed his interest in the property to the appellants before the date of the cross-bill.

The extension of the mortgage debt in 1874 was made without the knowledge or consent of the appellants or of the said Charles G. Beers. The contention of the appellees was that under the circumstances it operated as a discharge of the mortgage lien.

The court below decreed the foreclosure of the mortgage and sale of the mortgaged estate. From this decree the defendants below appealed.

*Mr. John S. Miller* for the appellants. I. Mary Beers occupied the position of surety. The appellants, as her privies in estate, are entitled to every defence which could have availed to her. *Bank of Albion* v. *Burns,* 46 N. Y. 170.; *Smith* v. *Townsend,* 25 N. Y. 479; *Gahn* v. *Niemcewicz,* 11 Wend. 312; *S. C.* 3 Paige, 614; *Johns* v. *Reardon,* 11 Md. 465; *Purvis* v. *Carstaphan,* 73 N. C. 575; *Aguilar* v. *Aguilar,* 5 Madd. 414; *Stanford, &c., Banking Co.* v. *Ball,* 4 De G., F. & J. 310; *Earl* v. *Countess of Huntingdon,* 2 Bro. P. C., case 1. II. By the extension of the time of payment, the mortgaged estate was released. *Bank of Albion* v. *Burns,* 46 N. Y. 170; *Smith* v. *Townsend,* 25 N. Y. 479. III. The will devised a life estate to Cyrenius, and remainder to the children. *Doe* v. *Considine,*

6 Wall. 458; *Doe* v. *Martin*, 4 Term R. 39; *Lambert* v. *Thwaites*, 2 Law Rep. Eq. Cas. 151–5; *Minors* v. *Battison*, 1 E. L. R. App. Cas. 428. The extension was not authorized by the power in the will. *Ward* v. *Bank of Ky.*, 7 T. B. Mon. 93; *Seitzinger* v. *Weaver*, 1 Rawle, 375; *Horwitz* v. *Norris*, 49 Penn. St. 213; *Slifer* v. *Beates*, 9 S. & R. 166; *Hetzel* v. *Barber*, 69 N. Y. 1. In making the extension, Beers acted solely in his own interest, and not as donee of the power. *Sir Edward Clere's Case*, 6 Coke R. 17 B.; *Andrews* v. *Emmott*, 2 Bro. C. C. 597; *Cox* v. *Chamberlain*, 4 Ves. 631; *Nunnock* v. *Horton*, 7 Ves. 391; 1 Sug. Pow. *367, *412; *Denn* v. *Roake*, 2 Bing. 497; *S. C.* 5 B. & C. 720; *S. C.* 1 Dow & Cl. 437; *Blagge* v. *Miles*, 1 Story R. 426; *Jones* v. *Wood*, 16 Penn. St. 25; *Bell* v. *Twilight*, 22 N. H. 500; 2 Story Eq. Jur., § 1062 a; *Coffing* v. *Taylor*, 16 Ill. 457; *Pease* v. *Pilot Knob Iron Co.*, 49 Mo. 124; *Mory* v. *Michael*, 18 Md. 227; *Maryland Mut. Ben't Society* v. *Clendinen*, 44 Md. 429; *Funk* v. *Eggleston*, 92 Ill. 515; *Towles* v. *Fisher*, 77 N. C. 437; *Blake* v. *Hawkins*, 98 U. S. 315. The power to sell was a naked power not coupled with a trust. Lewis on Trusts, 22, 6th London Ed. 19; 3 Redf. on Wills, 469; Hill on Trustees, 67; 2 Sugden on Powers, 159; *Eldridge* v. *Heard*, 106 Mass. 579.

*Mr. Edward S. Isham* for the appellee.

MR. JUSTICE MATTHEWS delivered the opinion of the court. After reviewing the principal facts, he said:

This extension of the time of payment of the mortgage debt was made without any consent thereto on the part of the appellants.

It is claimed on their behalf that, as owners of the estate mortgaged by the testatrix to secure the debt of her husband, they are in a position of sureties, and that the extension of time for the payment of the debt, without authority from them, is, in equity, a discharge of the lien of the mortgage.

The appellee insists, in reply to this claim, that the agreement by which further time was given for the payment of the debt, during which the mortgage was continued in force, was

authorized by the will of Mary Beers and binds her devisees. Whether this be so is the precise question we are required to decide.

We are reminded, at the outset of the argument, by the counsel for the appellants, that being sureties, they are favorites of the law; that their contract is *strictissimi juris;* and that nothing is to be taken against them by intendment or construction. It is quite true that "the extent of the liability to be incurred must be expressed by the surety, or necessarily comprised in the terms used in the obligation or contract;" that is, "the obligation is not to be extended to any other subject, to any other person, or to any other period of time than is expressed or necessarily included in it." "In this sense only," continued Mr. Burge, Law of Suretyship, 1st Am. Ed., p. 40, "must be understood the expression that the contract of the surety is to be construed strictly. It is subject to the same rules of construction and interpretation as every other contract." Besides, the rule of construction applies only to the contract itself, and not to matters collateral and incidental, or which arise in execution of it, which are to be governed by the same rules that apply in like circumstances, whatever the relation of the parties. So that the fact that the appellants occupy the relation of sureties cannot control the determination of the question whether the agreement extending the time of payment of the mortgage debt, and the continuance of the mortgage as an encumbrance upon the estate, was a valid execution of the powers conferred by the will of the testatrix. That question must be answered according to its own rules.

It is further said, however, on the part of the appellants, that the agreement of February 24th, 1874, cannot be sustained in support of a continuation of the mortgage lien, as an execution of the powers conferred by the will of Mary Beers, because it does not appear that it was so intended by Cyrenius Beers, the donee of those powers. It is argued that the agreement of extension makes no reference either to the power or to the property of the testatrix, which is the subject of the power; that every provision contained in it can have its full operation and effect; that is, all that it professes to do or provide for can

be done, according to its full tenor, without referring the act to the power, and by referring it solely to the individual interest of Cyrenius Beers, as the debtor of the appellee.

This, however, on an examination of its terms, will appear to be an erroneous view of the true meaning and legal effect of the agreement of extension. It recites the indebtedness of Cyrenius Beers to the appellee, as then due and unpaid; that he had applied to them to extend the time for the payment of the principal sum; that Cyrenius Beers and Mary, his wife, had executed and delivered their deed of mortgage to secure the payment thereof; it is thereupon witnessed that The Connecticut Mutual Life Insurance Company doth thereby extend and postpone the time of payment of the principal sum until February 24th, 1879, interest to be paid thereon at the rate of nine per centum per annum; and in consideration thereof Cyrenius Beers agrees to pay the principal sum on the day named therefor, and the interest thereon as stipulated, it being understood that on failure to pay any instalment of interest the whole of the principal sum shall thereupon become due, and may be collected without notice, together with all arrearages of interest. It is also understood and agreed between the parties, that nothing in the agreement shall operate to discharge or release Cyrenius Beers from his liability upon the bond originally given for the payment of the debt, " but it is expressly understood that this instrument is to be taken as collateral and additional security for the payment of said bond." It is also expressly understood and agreed between the parties that in the event of failure on the part of Cyrenius Beers, " to fulfil, keep, and promptly perform, as well in spirit as in letter, the covenants in said mortgage contained, given by said Cyrenius Beers to said company, then, at the election of the said company, the whole of said principal sum in the condition of said bond mentioned shall thereupon at once become due and payable, and may be collected without notice, together with all accrued interest thereon at said rate of nine per centum per annum, anything hereinbefore contained to the contrary notwithstanding."

Taking the instrument in all its parts and looking at its en-

tire scope and purpose, it must be admitted that, notwithstanding its omission of any direct and express stipulation of that character, its meaning and legal effect are to continue in force, so far as the parties to it had lawful authority to do so, the covenants and lien of the mortgage as security for the payment of the original debt, with the interest reserved at the increased rate until the expiration of the extended time of payment. This effect was undoubtedly intended by the parties, and this intention could not take effect except by virtue of the powers contained in the will of Mary Beers. Cyrenius Beers, as debtor, had no power to continue the mortgage in force, nor as tenant for life to renew it as a mortgage in fee. This is a demonstration, therefore, that the instrument must be treated as an execution of those powers, because, if it cannot otherwise operate according to the intention of the parties, it must be referred to the power which alone can make it effectual in all its provisions.

The rule applicable in such cases, it is claimed, is that deduced as the doctrine of *Sir Edward Clere's Case*, 6 Rep. 17 b, as stated by 1 Sugden on Powers, 417, 7th London Ed., that "where the disposition, however general it may be, will be absolutely void if it do not enure as an execution of the power, effect will be given to it by that construction." Mr. Chance, however, says:

"There are, indeed, in the case *dicta* apparently to this effect, that if the instrument refer not to the power and can have some effect by means of the interest of the party, though not all the effect which the words seem to import, still the instrument shall not operate as an execution of the power, the intention being thus contravened. It appears quite clear, however, at this day, and a reference to the authorities will, it is apprehended, show that it has been considered clear for nearly two centuries, that the rule is not thus confined ; indeed, it may well be asked why, admitting that the intention can be discovered to pass all, the intention should not prevail in the one case as well as in the other? What rule of law or construction would be thereby violated?" 2 Chance on Powers, 72, § 1597, London Ed. 1831.

And Sir Edward Sugden said:

" And notwithstanding Sir Edward Clere's case, an intent, ap-parent upon the face of the instrument, to dispose of all the estate, would be deemed a sufficient reference to the power to make the instrument operate as an execution of it, inasmuch as the words of the instrument could not otherwise be satisfied."    2 Sugden on Powers, 412, ch. VI. sec. VIII. 7th London Ed.

In the present case, as we have seen, the legal effect and meaning of the instrument cannot be satisfied without treating it as an execution of the powers under the will, for Cyrenius Beers, merely as debtor, as mortgagor, and as owner of the life estate under the will of his wife, could not lawfully agree to keep in force and renew a mortgage upon the estate of which the appellants were devisees in remainder in fee.

The Supreme Court of Illinois in the case of *Funk* v. *Eggleston*, 92 Ill. 515, had the question under consideration, and in a learned opinion, in which a large number of authorities, both English and American, is reviewed, discarded even the modified English rule of later date, and adopted that formulated by Mr. Justice Story in *Blagge* v. *Miles*, 1 Story, 426, as follows:

" The main point is to arrive at the intention and object of the donee of the power in the instrument of execution, and that being once ascertained, effect is given to it accordingly. If the donee of the power intends to execute, and the mode be in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other inter-pretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. All the authorities agree that it is not necessary that the intention to execute the power should appear by express terms or recitals in the instrument. It is sufficient that it should appear by words, acts or deeds demonstrating the intention." '

The rule as adopted by this court was tersely stated by Mr.

Justice Strong, in delivering its opinion in *Blake* v. *Hawkins*, 98 U. S. 315–326, in this form:

"If the will contains no expressed intent to exert the power, yet, if it may reasonably be gathered from the gifts and directions made that their purpose and object were to execute it, the will must be regarded as an execution. After all, an appointment under a power is an intent to appoint carried out, and if made by will the intent and its execution are to be sought for through the whole instrument."

In the case of *Munson* v. *Berdan*, 8 Stewart (N. J.), 376, it is said:

"It is sufficient if the act shows that the donee had in view the subject of the power."

And in *White* v. *Hicks*, 33 N. Y. 383–392, Denio, Ch. J., said:

"This doctrine proceeds upon the argument that by doing a thing which, independently of the power, would be nugatory, she (the donee of the power) conclusively evinced her intention to execute the power."

And in *Sewall* v. *Wilmer*, 132 Mass. 131–134, the Supreme Judicial Court of Massachusetts, in reference to a will made in Maryland, which was the domicile of the testatrix, but the provisions of which related to both real and personal estate situated in Massachusetts, held it to be a valid execution of a power contained in the will of her father, whose domicile was in that State, although it would have been otherwise held in Maryland. Gray, C. J., said:

"But in this commonwealth the decisions in England since our Revolution, and before the St. of 7 Will. IV., and 1 Vict., ch. 26, § 27, have not been followed; the court has leaned toward the adoption of the rule enacted by that statute as to wills thereafter made in England, namely, that a general devise or bequest should be construed to include any real or personal estate of which the testator has a general power of appointment, unless a con-

trary intention should appear by his will ; and it has been adjudged that the mere facts that the will relied on as an execution of the power does not refer to the power, nor designate the property subject to it, and that the donee of the power has other property of his own upon which his will may operate, are not conclusive against the validity of the execution of the power; but that the question is in every case a question of the intention of the donee of the power, taking into consideration not only the terms of his will, but the circumstances surrounding him at the time of its execution, such as the source of the power, the terms of the instrument creating it, and the extent of his present or past interest in the property subject to it."

We cannot doubt that Cyrenius Beers, in the agreement of February 24th, 1874, intended to exert whatever power had been conferred upon him by the will of his wife to continue in force the mortgage to the appellee, as an encumbrance upon her estate, for the reason that it is upon that supposition alone that it can have its due legal effect, *ut res magis valeat quam pereat;* and by force of the rules which we have seen ought to govern in such cases, we hold that, if the agreement, as made, is within the scope of the power, it must be regarded as a valid execution of it.

The question next to be considered, therefore, is, whether Cyrenius Beers was empowered by the will of his wife to consent to an extension of the time of payment of the mortgage debt, and a continuance thereby of the lien on the mortgaged estate.

It is to be observed, in the first place, that he is made executor of the will, tenant for life for his own use of all the property of the testatrix, and trustee of the legal title. Whether his title as trustee is to be considered as a fee simple or for life, or a chattel interest only, it is not necessary to decide. Its duration is to be measured by the nature of the purposes for which it was created, and they include the power to mortgage, to sell, and to reinvest in his own name as trustee. And it is not without significance, although of how much importance is not material, that the remainder in fee limited to the children of the testatrix, and which is described as a limitation of all the

estate of which the testatrix should die seized or possessed, is subsequently referred to as what shall remain after the death of the tenant for life, and after the exercise by him of the power of mortgaging or selling and reinvesting has been exercised for the purpose of paying the indebtedness upon the property. It is further to be noticed that the powers to mortgage and to sell are authorized to be exercised by him for the purpose specified, " as though he held an absolute estate in said property." The specific power given is to " encumber the same by way of mortgage or trust deed or otherwise, and renew the same, for the purpose of raising money to pay off any and all encumbrances now on said property," and the additional power to " sell and dispose of any or all the real estate of which I may die seized or possessed, as though he held an absolute estate to the same, and out of the proceeds pay any of the encumbrances upon any of the property of which I may die seized and possessed," and " the remainder over and above what may be required to pay the indebtedness upon said property, the same now being encumbered, to reinvest in such way as he may see proper, and from time to time sell and reinvest, such reinvestment to continue to be held in trust the same as the estate of which I may die possessed."

It is too plain to admit of dispute that under these ample powers Cyrenius Beers might have secured, by a new mortgage, a loan of the sum of money, at the stipulated rate of interest, necessary to pay his indebtedness to the appellee, and that he might, by a new loan from the appellee itself, secured by a new mortgage, upon the same terms and for the same time as granted by the agreement of extension, have raised the money and discharged the mortgage now in suit. Such a transaction would have been strictly within the letter of the authority. And yet it would, in fact, have been nothing but what was accomplished by the agreement of extension, namely, a continuance of the old loan, secured by the old mortgage, for a new term and at a higher rate of interest. The two transactions, though not the same in form, are so in substance, and a substantial execution of the power is all that is required. In the case of *Bullock* v. *Fladgate*, 1 Ves. & Beames, 471, where

the power was to convert an estate into money and to purchase other lands, which were the subject of the appointment, the master of the rolls, Sir Wm. Grant, no conversion having taken place, but the original estate having been appointed, said:

"I apprehend that equity will uphold an appointment of the estate itself as amounting substantially to the same thing; on which principle it is that appointments deviating considerably from the title of the powers under which they were made, have frequently been supported."

The power to encumber the estate "by way of mortgage or trust deed or otherwise, and renew the same," is broad enough to include the renewal and extension of an existing encumbrance as well as the creation of a new one; and this is not inconsistent with the declaration that it is to be "for the purpose of raising money to pay off any and all encumbrances now on said property." The object clearly was to meet the demand of the existing mortgagee for punctual payment of the debt secured, and to prevent the possible sacrifice of a forced sale to satisfy the demand, if not complied with; an object which could as well be accomplished by extending the existing mortgage as by substituting a new one in its place. The power to renew a mortgage given for the purpose of raising money to pay off an existing encumbrance is expressly given; to renew an existing one, to avoid the necessity of creating a new encumbrance, is, we think, reasonably and fairly to be implied as equally within the intention of the testatrix, and within the scope of the powers created by the will. The extension of a mortgage debt, and continuance of a mortgage lien, is one mode of encumbering the property, and may be a step, and possibly, under some circumstances, a very important and necessary one, in preparing for its payment and extinguishment. Indeed it might well be, as the transaction shows the parties to it so understood, that Cyrenius Beers, uniting in himself the various characters of principal debtor and joint mortgagor, and of executor of his wife's will, tenant for life of the estate devised, and trustee with the ample powers conferred upon him of dealing with the encumbrance, was, in reality,

constituted by the testatrix as the representative of all the interests created by the will, fully authorized, as if he were absolute owner of the estate, even as she could have done in her lifetime, to consent to the extension of the time of payment of the mortgage debt without prejudice to the mortgage security.

There is no error in the record, and

*The decree of the circuit court is affirmed.*