12472

THOMSON v. EHRLICH ET AL.

(146 S. E., 149)

*Messrs. Monteith & Monteith,* and *D. W. Robinson,* and *D. W. Robinson, Jr.,* for appellants, 

*Messrs. Benet, Shand & McGowan,* for respondent, 

December 13, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This appeal was heard at the March session of the spring term, 1928, and on June 14, 1928, an opinion was filed reversing the judgment of the Circuit Court and dismissing the complaint.

A petition for a rehearing was filed by the plaintiff respondent, and upon consideration it was granted. The appeal then came on to be heard at the October session of the fall term.

The Court has with the greatest care reviewed the former decision and has been assisted by elaborate arguments filed upon the rehearing. It has not been convinced that the result heretofore announced should be entirely reversed.

The action is by Francis E. Thomson, who claims the fee-simple title to the real estate in question, two stores, Nos. 1639 and 1641 Main street, in the City of Columbia,

against the heirs at law of Rebecca Ehrlich, for the purpose of quieting his title thereto.

The property belonged to Rebecca Ehrlich at the time of her death, October 14, 1889. By her will, dated December 22, 1923, she devised it to her son Frank N. Ehrlich, "his heirs and assigns forever, upon trust nevertheless and to and for the uses, intents and purposes hereinafter limited, described and declared; that is to say upon trust to receive the issues, rents and profits arising therefrom and to apply the net income after the payment of taxes, insurance, repairs and all other charges to the sole use, benefit and behoof of my daughter, Matilda Friday, for and during the term of her natural life or in his discretion to permit her, the said Matilda Friday, to use, occupy and enjoy the said property and to receive the issues, rents and profits arising therefrom for and during the term of her natural life and from and after the death of the said Matilda Friday upon trust for such child or children as she may leave her surviving, share and share alike, the child or children of a deceased child to take the share to which the parent would be entitled if living, but should the said Matilda Friday die not leaving issue living at the time of her death, then and *in that event the said Frank N. Ehrlich shall hold the said property in trust for such person or persons as she, the said Matilda Friday, may thereunto nominate and appoint by her last will and testament. * * * "*

Upon the death of the original trustee, Frank N. Ehrlich, Matilda Friday, by virtue of the authority conferred upon her in the will of Rebecca Ehrlich, appointed her brother, Edward M. Ehrlich, trustee, and upon his death her nephew Frank N. Ehrlich, one of the defendants herein; and on March 4, 1924, she substituted the plaintiff, Francis E. Thomson, as trustee, in the place of the defendant Frank N. Ehrlich.

Matilda Friday, the beneficiary of the trust, died childless February 13, 1925, leaving a will which, after a pecuniary legacy of $500 to her grandniece,

Lewis Louise Thomson, and a specific legacy of her jewelry to her niece, Rebecca E. Thomson, contained this clause:

"4. I give, devise and bequeath to my grandnephew, Francis Ehrlich Thomson, *all the rest and residue of my estate, real, personal, mixed or of any nature whatsoever,* to him, his heirs and assigns forever."

The plaintiff, Francis E. Thomson, contends that, under the will of Rebecca Ehrlich, Matilda Friday was given the power to name the recipient of the fee-simple title to this property, upon her death "not leaving issue at the time of her death," and that the above quoted clause constitutes an execution of that power; the appellants deny the correctness of that contention; the other defendants, children of Frank N. Ehrlich, Sr., deceased, Rebecca E. Thomson, and Emma L. Menge, are aligned with the plaintiff, Francis E. Thomson, and are not appellants.

The sustaining of the contention of the appellants would result in declaring the property in controversy intestate property of the estate of Rebecca Ehrlich, distributable among her heirs at law.

The genealogy is somewhat confusing; in explanation it may be stated: Rebecca Ehrlich had three children (perhaps more; if so, they died without children, and their interests are not here involved), Matilda Friday, Frank N. Ehrlich, Sr., and Edward M. Ehrlich; Frank N. Ehrlich, Sr., is dead, leaving five children, Frank N. Ehrlich, Jr., John G. Ehrlich, Edward M. Ehrlich, Rebecca Thomson, and Emma L. Menge; the plaintiff, Francis E. Thomson, a son of Rebecca Thomson, is a great-grandson of Rebecca Ehrlich, and a grandnephew of Matilda Friday; Edward M. Ehrlich, the third of the children of Rebecca Ehrlich, died without children.

The case was referred to J. C. Townsend, Esq., Master, who filed his report, dated November 24, 1926, recommending a decree to the effect that "Mrs. Matilda Friday did intend to execute, in her will, the power given her under the will of Rebecca Ehrlich, and that the defendants, and all

other persons claiming or to claim the real estate in question by, through, or under them, be forever barred from asserting any claim to the same."

Upon exceptions to this report his Honor, Judge Wilson, filed a formal decree, dated April 27, 1927, confirming the report in all respects, and from his decree the appellants named above have appealed, upon the following exceptions:

"1. That his Honor erred in confirming the Master's report, paragraph 22 of the said report, that parol evidence was admissible at the hearing, to explain the writing, and the given circumstances and the testimony of the plaintiff himself was admissible; the error being that this evidence was inadmissible (a) as tending to vary or contradict the terms of the will, and in violation of the parol evidence rule; (b) in violation of the statute of wills; (c) because the intent of the testatrix must be found in the written will alone; (d) in violation of Section 708 of the Code of Civil Procedure 1922.

"2. That the Court erred in adjudging that the will of Matilda Friday was an execution of the power of appointment granted to her by the will of Rebecca Ehrlich, and that the said will of Matilda Friday executed this power in favor of the plaintiff, Francis Ehrlich Thomson; the error being that the said will of Matilda Friday did not constitute an execution of the said power, and did not operate as an appointment of the real estate described in the complaint to the plaintiff herein."

As we view the case, it becomes necessary to consider only the second exception, as the first exception complains of the admission of certain parol evidence, which really amounts to little.

The plaintiff claims the legal title to the property; it is by no means certain that the power of appointment extended further·than *to designate the beneficiaries of the trust,* in the event of the death of Matilda Friday without children, vesting in him or them an equitable estate; as manifestly the fee was in the trustee and intended to remain in him under the

terms of the will. This, however, is not conclusive of the issue, as doubtless the legal title in the substituted trustee (Francis E. Thomson) would merge in his equitable title if his contention be sustained; but it is a material consideration, as we shall see, in determining the real issue, whether the will of Matilda Friday constituted an exercise of that power.

In testing the efficacy of the contents of an instrument which is claimed to have constituted an execution of a testamentary power of appointment, it is interesting and instructive to compare those contents with what would reasonably be expected in such an instrument. Nowhere are they more clearly defined than in the language of Chancellor Kent, 4 Kent, 329, quoted with approval by this Court in *Bilderback v. Boyce,* 14 S. C., 528:

"Every instrument executing a power should mention the estate or interest disposed of; and it is best to declare it to be made in exercise of the power, and the formalities required in the execution of the power must appear on the face of the instrument."

Measured by this yardstick, it is manifest that the clause falls very far short of a strict compliance with the requirements; it makes no mention of the will of Rebecca Ehrlich which conferred the power, nor of the existence of the power, nor of a purpose to execute it, nor of the property over which the donee had been invested with the power of appointment.

The language of the clause limits the provision in favor of Francis E. Thomson to "my estate"; that is, the estate of the testatrix, Matilda Friday. The decisions of this Court establish the principle that a power of appointment by will, vested in a devisee or donee by will, *is not a part of the estate of the donee of the power.*

In *Bilderback v. Boyce,* 14 S. C., 528, the Court said: "When, therefore, a testator having property leaves a will, disposing of it in the usual manner, without any reference

to a power, the inference, in the absence of other proof, is that the will is not one of the exceptions, but, as it purports, *disposes only of the estate proper of the testator."*

And again it is said in the same case: "The words in the residuary clause are very comprehensive, 'whatever and wherever,' but they do not reach the hotel, for the reason that they *refer in terms to the testator's 'estate.'* The expression 'all the rest and residue of my estate, of every nature and kind,' in *Blagge v. Miles,* was said to be incapable of passing property over which testator had only a power. These words mean that the testator does not intend to die intestate *as to any part of his estate,* and they generally mean nothing more.' *Lupton v. Lupton,* 2 Johns Ch. [N. Y.], 623."

In *Adger v. Kirk,* 116 S. C., 298, 108 S. E., 97, the Court said: "The remainder over which Harvey W. Flinn is given the power of appointment is not a part of the estate of Harvey W. Flinn, but it passes under the will of the donor of the power. It could not, therefore, be held to respond to the debts of Harvey W. Flinn. This is conclusively shown by the case of *Bilderback v. Boyce,* 14 S. C., at page 541."

In *Farnum v. Pennsylvania Co.,* 87 N. J. Eq., 108, 99 A. 145, the Court held that the term "my estate," occurring in the residuary clause of the donee's will, alluded *to her own property,* and not to property over which she had a power of appointment.

We begin with the discussion, then, with the very clear and positive presumption that the expression *"my estate,"* in the will of Matilda Friday, *referred to and covered the property only which belonged to her in her individual right,* a strong circumstance against the construction of the clause as an execution of the power over property *which did not belong to her.*

Besides this fact, and the absence of all reference to Rebecca Ehrlich's will, to the existence of a power, to a purpose to execute that power, and to the property subject to

the power, the clause occupies a most inconspicuous place in the will. As the Court says in the *Bilderback case:* "If the will were intended to refer to and accomplish *a matter so remarkable as the execution of a power,* the part intended to make the appointment would naturally be separate and distinct from the other parts." Instead, it is submerged, if at all, in a *residuary* clause, apparently affecting only her individual property.

There are two very distinct lines of decisions upon the subject:

(1) A line holding that a power of appointment is not executed by a residuary clause of the donee's will, *unless an intention to execute the power clearly appears from the will;*

(2) A line holding that a residuary clause in a donee's will is effective as an execution of a power, *unless a contrary intention appears in the will.*

The cases sustaining the second proposition, which is characterized in a note, 32 A. L. R., 1395, as "the minority rule," are from the Courts of Massachusetts, New Hampshire, and North Carolina, set forth at page 1397. The cases sustaining the first proposition, which is characterized in the note referred to as "the majority rule," are from the Courts of California, Connecticut, Illinois, Maryland, Missouri, New Jersey, South Carolina and Texas, set forth at page 1395 of 32 A. L. R.

The case of *Bilderback v. Boyce,* 14 S. C., 528, clearly sustains the first proposition; it has been reaffirmed by this Court in no less than 14 cases. The Court distinctly adopts the rule announced in the Court of Chancery in England, and commenting upon the case of *Newell v. Roake* (House of Lords), 19 E. C. L., 139, said:

"In that case it was solemnly decided [both in King's Bench and House of Lords] that the Court would infer an intent to execute a power only in three cases: First, where there was some reference in the will or other instrument to the power; second, or reference to the property which is the subject on which it is to be executed; third, *or where the*

*provision in the will would have no operation except as an execution of the power."*

The same principle is announced in 1 Story Eq. Jur. (14th Ed.), § 264: "The rule adopted by the Courts seems to be that there are three classes of cases in which it may be said that the power has been executed: (1) Where there is a reference to the power in the instrument; (2) where there is a reference to the property on which it is subject to be executed; and (3) where the provisions of the deed or will executed by the donee would otherwise be ineffectual—*that is, would have no operation, except as an execution of the power."*

The plaintiff does not contend that there is any reference in the Friday will to the power contained in the Ehrlich will, or that there is any reference in the Friday will to the property as to which the power in the Ehrlich will is to be executed; the will itself excludes the possibility of either contention; he is confined to the contention that by reason of the facts that the residuary clause in the Friday will refers to real estate (albeit she describes it as "my real estate"), and that she owned no other real estate than her beneficial interest in the trust estate, he is entitled to claim an execution of the power under the third condition declared by Judge Story and by this Court in the *Bilderback case,* above. That is the pivot of this case.

It is thus sought to infer, from an exceedingly dubious expression, an intention on the part of Matilda Friday to recognize the existence of, and endeavor to execute, the power contained in the Ehrlich will. While much stress is laid in the authorities upon the *intention of the donee* to execute the power, it seems to us that entirely too much importance is attached to that issue. The execution of a power to divert the testator's property from his heirs, who would otherwise receive it under the law, necessarily involves directly the interests of those heirs, and, before they can be deprived of their legal rights, the power must be exe-

cuted in the mode provided for by the testator. The inquiry, therefore, should be whether the donee has *in fact,* not *in intention,* complied with those conditions. Why should the estate of the heirs, which the law has vested in them, immediately upon the death of the testator, depend, not upon the *act* of the donee, but his *intention?*

In Bingham's Appeal, 64 Pa., 345, it is held substantially as follows: "In considering the question whether a power has been executed by the donee thereof, it is not enough that it is possible, but not certain, that he intended an execution of the power; for it must not be forgotten that when handling such a question, the Court is dealing with the property of another, and not with that of the donee of the power; that in the donee it is but a trust, and those interested in the estate of the donor have a right to know that the will of their testator has been actually executed as he intended, by the donee of his power. And hence they are entitled to certainties, not mere conjectures or possibilities.".

If this question should be determined by the *intention* of Matilda Friday, *which intention can be gathered only from the will,* we think that under the decisions which are stringent upon the character of the evidence required, the plaintiff has failed.

In *Blake v. Hawkins,* 98 U. S., 315, 25 L. Ed., 139, quoted with approval in the case of *Warner v. Insurance Co.,* 109 U. S., 357, 3 S. Ct., 221, 27 L. Ed., 962, it is said: "If the will contains no expressed intent to exert the power, yet, if it may reasonably be gathered from the gifts and directions made that their purpose and object were to execute it, the will must be regarded as an execution. After all, an appointment under a power is an intent to appoint carried out, and if made by will *the intent and its execution are to be sought for through the whole instrument.*"

In *Hartford-Connecticut Trust Co. v. Thayer,* 105 Conn., 57, 134 A., 155, the Court said: "The intention to execute the power must be *apparent and clear, so that the transaction*

*is not susceptible of any other interpretation,* and, if it be doubtful under all the circumstances, that doubt will prevent it from being deemed an execution"—citing *Union & New Haven Trust Co. v. Bartlett,* 99 Conn., 245, 122 A., 105, citing 1 Story, Eq. (14th Ed.), 245; *Hill v. Conrad,* 91 Tex., 341, 43 S. W., 789.

"Intent to execute a power of appointment must be *apparent and so clear that transaction is susceptible of no other interpretation."* *Hartford-Connecticut Co. v. Thayer,* 105 Conn., 57, 134 A., 155.

"Whether a power has been executed is a matter of the donee's intention, which must be *clearly manifested."* *Hupp v. Union Co.,* 284 Pa., 529, 131 A., 364.

"Where a donee of a power to dispose of property by will intends to execute the power, the intention, in the absence of any statute on the subject, must be so apparent that the instrument is not fairly susceptible of any other interpretation." *Rhode Island Hospital Co. v. Dunnell,* 34 R. I., 394, 83 A., 858, Ann. Cas., 1914-D, 580.

In *Sketchley v. Campton,* 9 N. J. Eq., 131, 132 A., 671, the clause in the donee's will claimed to have constituted an execution of the power contained in her husband's will was this: "I give, devise and bequeath to my son * * * all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever the same may be situate, to him, his heirs and assigns forever."

*The donee owned no real estate outside of that as to which, after a life estate, the power pertained.* The Court held: "No mention is here made of any power of appointment. [It might also have been said that no mention was made either, of the particular property.] Mary the mother [donee of the power], owned no real estate in her own right. I am of the opinion that she did not exercise [execute?] the power of appointment given to her under her husband's will."

The Court sustained this conclusion by quoting from the case of *Farnum v. Pennsylvania Co.,* 87 N. J. Eq., 108, 99 A., 145, as follows: "The intention to execute a power must always appear in its execution either by express terms or recitals, or by necessary implication. A reference to the instrument by which the power is given is, indeed, not necessary to demonstrate the intention to execute such a power, but *it must appear from the will* that the intention existed. It need not appear by express terms or recitals in the instrument; it is sufficient if the act shows that the donee had in view the subject of the power. * * * No allusion whatever is made in the many items of the will and codicils to the fund or the testatrix's control over it. By each of the items a specified sum of money is bequeathed, referable, *prima facie*, to her own private fortune, and by the residuary clause 'the rest, residue and remainder of my estate' is disposed of. A general devise or bequest by the donee of a power in which the testator refers to the property devised or bequeathed as his property has been repeatedly held not to be an exercise of the power"—citing *Wooster v. Cooper,* 59 N. J. Eq., 204, 45 A., 381; *Meeker v. Breintnall,* 38 N. J. Eq., 345; *Ackerman v. Ackerman,* 81 N. J. Eq., 437, 86 A., 542; *Lee v. Simpson,* 134 U. S., 572, 10 S. Ct., 631, 33 L. Ed., 1038; *Patterson v. Wilson,* 64 Md., 193, 1 A., 68.

It would be difficult to find a case that more perfectly paralleled the case under consideration. As is said in the *Bilderback case:* "We are content to take this as the result of all the American authorities, which declare that the intention to execute must be *apparent and clear, so that the transaction is not fairly susceptible of any other interpretation.*" (Italics by the Court.)

Judge Story adds: "But *if, upon the whole will,* it appeared that the testator intended to execute the power of appointment, a general residuary clause will be held sufficient, altho there may be no reference in the will to the power. When the circumstances are so equivocal as to leave the

mind in doubt whether an execution of the power was at all intended, it must be held that it was not executed. The intention to execute the power must be apparent and clear, *so that the transaction is not susceptible of any other interpretation*, and if it be doubtful under all the circumstances, the doubt will prevent it from being deemed an execution of the power. It is not necessary, therefore, that the intention to execute the power should appear by express terms or recitals in the instrument, but it is sufficient that it appears by words (in the instrument, of course), which, when fairly construed, indicate the intention of the donee to execute the power."

"It has long been the settled doctrine in England that where the power is not referred to, the property subject to its operation must be mentioned, so as to indicate that the disposition was intended to affect it; or, in other words, the donee must do such an act as to show that he has in view the thing of which he has the power to dispose. When this question has arisen in the construction of wills, it seems to have been firmly settled that a mere general devise or bequest, however unlimited in terms, will not comprehend the subject of the power, unless it refer to the subject, or to the power itself, or unless an intent to execute it becomes apparent from circumstances to such a conclusion." *Patterson v. Wilson,* 64 Md., 193, 1 A., 68.

"The rule which we deduce from the American authorities is that a trustee or donee of a power may execute the power conferred upon him by an instrument which does not refer to the power itself; but in such case, to make the execution of the power valid, it must appear from the instrument or from the attending circumstances that the donee or trustee did in fact act under and by virtue of the power conferred upon him to dispose of the property in question, and that it was his intention to dispose of the property in accordance with the power so conferred. If from the circumstances * * * it would be doubtful as to whether

it was the intention to execute the power possessed by the grantor, then it will not be held that by such act or conveyance that power was in fact executed." *Hill v. Conrad,* 91 Tex., 341, 43 S. W., 789.

"The intent must be so clear that no other reasonable one can be imputed to the will, and if the will does not refer to a power or the subject of it, and if the words of the will may be satisfied without supposing an intention to execute the power, then, unless the intention to execute the power be clearly expressed, there is no execution of it." *Carraway v. Moseley,* 152 N. C., 351, 67 S. E., 765.

"When the circumstances, as here, are so equivocal as to leave the mind in doubt whether an execution of the power was at all intended, it must be held that it was not executed." *Cramton v. Rutledge,* 157 Ala., 141, 47 So., 214.

In reference to the contention that Matilda Friday had no other property than her beneficial interest in the trust estate, and that for that reason the third condition has been met, the rule appears to be this:

As is said by Judge Story and by this Court in the *Bilderback case:* "Where the provisions of the will would otherwise be ineffectual—that is, would have *no operation* —except as an execution of the power."

Or, as expressed in 2 Perry, Trusts (6th Ed.), § 511c: "Where the instrument of execution would have *no operation,* but would be *utterly insensible and absurd,* if it was not the execution of a power" cited by the North Carolina Court in the case of *Denson v. Pine State Co.,* 191 N. C., 198, 131 S. E., 581; or in *White v. Hicks,* 33 N. Y., 383, quoted in *Warner v. Insurance Co.,* 109 U. S., 357, 3 S. Ct., 221, 27 L. Ed., 962: "This doctrine proceeds upon the argument that, by doing a thing which, independently of the power, would be *nugatory,* she (the donee of the power) conclusively evinced her intention to execute the power."

In *Hupp v. Union Coal Co.*, 284 Pa., 529, 131 A., 364, the Court said: "Where a power of sale is executed by deed without reference to the power, it is effective as such if it would otherwise *be a nullity; * * * but, if there be any other way in which their design can take effect,* it shall be deemed to operate in that way."

It is a very significant fact that the will of Matilda Friday was executed on *December 22, 1923,* at a time when Frank N. Ehrlich, one of the defendants here, son of the first trustee, was the acting trustee, and that the appointment of the plaintiff, Francis E. Thomson, in substitution of him, was not made until *March 4, 1924.* The title to the property was, when the will was executed, in the trustee, Frank N. Ehrlich, charged with certain trusts. The will of Mrs. Ehrlich provides: " * * * Should the said Matilda Friday die not leaving issue living at the time of her death, then and in that event *the said Frank N. Ehrlich shall hold the said property* upon trust for such person or persons as she, the said Matilda Friday, may thereunto nominate and appoint by her last will and testament."

Whether that means that the trustee should hold the property upon the same trusts as were attached to the trust in favor of Matilda Friday, or upon new trusts to be declared by her, or in fee simple, it is difficult to say. But certain it is that she was expected to "nominate and appoint" some person or persons, *for whom the trustee should hold the property.* There is not a semblance that she undertook to do this by her will; and there is nothing in the will of Mrs. Ehrlich which authorizes her to nominate and appoint some person or persons *to take the fee,* as the plaintiff contends.

Unquestionably, if Matilda Friday had, subsequently to the execution of her will, acquired real estate, such real estate would have passed under the will. It is not an unreasonable supposition that the clause was drawn in contemplation of such contingency; much more reasonable than that she intended by the expression *"my estate"* to include

something that *was not her estate at all*. The frequent changes of trustees under the will of Rebecca Ehrlich show that Matilda Friday was familiar with the status of the trust estate, and, if she intended to include it in the residuary clause, it is incredible, knowing the situation, that she should have left so important a matter in doubt. That she made no reference to the store lots in her will, or to the will of her mother which gave her the power of appointment, and left this matter to be determined upon the slender thread that, in referring to "my estate," she intended to include that which was not hers, when the clause is so plainly susceptible of the interpretation that she was considering her own property, is proof conclusive that in executing her will no thought of the trust estate entered her mind.

It is possible, however, that Matilda Friday considered the entire estate *as her property*, and that, as such, she intended the clause to cover it. That hypothesis would effectually dissipate the suggestion that she had the idea that she was, by that clause, executing the power of appointment contained in the original will; rather that the will had transferred the title to her and that she was dealing with the property as absolutely hers.

There is another consideration that negatives the contention that the power was executed for the reason that, if the will of Mrs. Friday cannot take effect as an execution of the power, it would be a nullity.

While Mrs. Friday had an equitable life estate in the income to be derived from the property, the fee was in the trustee, as a trustee for the heirs of Mrs. Ehrlich, in the event that Mrs. Friday did not execute the power of appointment. Mrs. Friday was the daughter of Mrs. Ehrlich and an heir at law when she died; it may be that as a tenant in common in her estate she inherited one-third of the property, and also one-half of the interest of Edward M. Ehrlich, her brother, who died unmarried and childless. It would appear, if that be true, that there would be no diffi-

culty in this interest passing under the will; but, as the question has not been raised, we are not to be understood as so deciding. It is entirely possible that she might have preferred *not to execute the power,* and thus throw the property into the estate of Mrs. Ehrlich, in which she was interested as an heir at law.

The third condition named by Story, *supra,* where the instrument would be practically a nullity unless construed as the execution of the power, applies more appropriately to a deed than to a will, certainly than to a will in which the only possible reference to the property claimed to be affected by the power is in a residuary clause covering undescribed property. In the case of a deed, a description of the property is necessarily set forth, and if the deed did not convey that property there would be nothing for it to operate upon. It is entirely reasonable, therefore, to conclude that the deed should be held to be an execution of the power.

With a residuary clause in a will, however, there is no such impelling argument. It would cover after-acquired real estate, as well as that owned by the testator at the time of making the will. It cannot be argued, therefore, that the will is a nullity, for the reason that at that time there was nothing for it to operate upon, if such was the fact.

Suppose a devise of a certain tract of land, Black Acre, be made to A for life, with power of designating by will the tenant in fee simple, in remainder, and the testator should devise Black Acre specifically in fee to B, making no reference to the power of appointment contained in the testator's will, and containing no evidence otherwise of his intention to act under the power, it seems clear that, under the third condition above mentioned, that to deny the execution of the power would render the will absolutely nugatory, the devise of the fee to B would be deemed an execution of the power. We are convinced that the third condition is limited to instances of this character.

See, also, *Lee v. Simpson*, 134 U. S., 572, 10 S. Ct., 631, 33 L. Ed., 1038; *Hopkins v. Mazyck*, Rich. Eq. Cas., 263; *Porcher v. Daniel*, 12 Rich. Eq., 349; *Boyd v. Satterwhite*, 10 S. C., 45; *Moody v. Tedder*, 16 S. C., 557; *Rembert v. Vetoe*, 89 S. C., 198, 71 S. E., 959, 2 A. L. R., 918; *Barbot v. Thompson*, 94 S. C., 3, 77 S. E., 716; *Price v. Realty Co.*, 113 S. C., 556, 101 S. E., 819; 1 Alexander, Wills, § 439; 1 Schouler, Wills, § 526; 31 Cyc., 1126; 3 Thompson, Real Prop., § 2223; note, 64 L. R. A., 849.

The conclusions herein announced are not entirely in accord with the case of *Barbot v. Thompson*, 94 S. C., 3, 77 S. E., 716, which we do not fully approve. That was a case brought by an executor against a proposed purchaser. None of the real parties in interest were before the Court. The decree of the Circuit Judge, which was affirmed in a formal opinion, admittedly was not the result of "any extensive research of the authorities"; it was manifestly an instance of those controversies as to the result of which both parties are agreeable, and which they are anxious to have consummated, a class of cases which are extremely dangerous, and of little weight as precedents.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for further proceedings not inconsistent with the conclusions herein announced.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.

MR. JUSTICE BLEASE (concurring) : As to the interest of Mrs. Friday in the estate of Mr. Ehrlich passing under her will, see the quite recent case of *Union Bank v. McNeal*, 145 S. C., 549.